Good morning. May it please the Court. Bennett Lee for the Appellant Medical Development International. With the Court's leave, I'd like to reserve five minutes or whatever time I have remaining for rebuttal. Sure. Just keep an eye on the clock if you would. I will, Your Honor. The Eastern and Northern Districts committed reversible error in depriving the appellant of its constitutional right to seek enforcement of its legal remedies for breach of a public contract. In this case, the contract was between MDI and the CDCR. And MDI is prepared to discuss all the issues that were briefed, but given the brevity of time, I want to focus on two issues. Counsel, don't you run into the Barton v. Barbour case right square? I mean, this is the action of a trustee acting under the auspices of the District Court, effectively a branch of the Court. The powers of the trustee cover what was talked about here. Don't you need the District Judge's permission to bring this suit? No, we don't, Your Honor. And it's important to also recognize the nature of the receiver in this case. This is a receiver unlike any of the other receivers that are in the briefs in the cases submitted by both parties. In Judge Henderson's OAR, it made it clear that this particular receiver and receivership was imbued with executive authorities. They were not acting as a true judicial officer, which is in most cases the context in which we find receivers. In fact, the OAR from February 14th, 2006, the Order Appointing Receiver, made it clear that this receivership had responsibility for, quote, unquote, executive management of the California prison medical care delivery system, and that the receiver would have the duty to control, manage, and supervise contractual relationships between the CDCR and its vendors with the end of achieving that goal. And, in fact, at the end of the OAR, the Court Judge Henderson made it clear that the receivership shall exercise the powers of the Secretary of the CDCR, and the CDCR is a State executive agency. So in this context, the receivership is not performing any judicial function. It is more of an operating receivership imbued with the powers of the State Executive Agency. But wasn't Judge Henderson himself involved in, in effect, the operations of the system because of deficiencies, constitutional deficiencies that he found in the system? Yes. So the receiver was acting on Judge Henderson's behalf. He was, Your Honor. And therefore, why does not – I mean, I know you're going to argue to me that it's 959A, and there's an exception there, but the facts of this case and the Court's language, I'm having real trouble finding where that fits into any of the exceptions, but the limited exceptions that seem to exist. Okay. Can you help me with that? Yes, I will. And it's important in that analysis to distinguish between official capacity of the receiver. We don't dispute that this receiver was acting under the authority prescribed by Judge Henderson in the OAR. But the error that the Northern and the Eastern District made was ending its analysis there, simply saying that because the actions, actionable conduct in the complaint submitted by MDI fell within the ambit of prescribed authority in the OAR, the receiver in the case of the Eastern District is subject to the Barton Rule, and in the Northern District's case is subject to judicial immunity. If you're right, who do we reverse here? You have grounds to reverse on both, both the Northern and the Eastern District, because the analysis is very similar in both cases. If the Barton Rule doesn't apply or the exception to the Barton Rule does apply, then I suppose the Eastern District judge never should have said, go get Judge Henderson's permission. Yes. So that would be the disposition. I mean, that would be, if we reverse that, then that's the ballgame, right? Yes and no. There's also the issue of the removal jurisdiction, because we have a right, MDI had a right to seek relief in the state court, and so the removal by the receivership brought it to the Eastern District, and we would submit that. But 1442A gives the receiver in this case an absolute right to remove. Why is that a problem? Your Honor, we don't believe that the right to remove is absolute. It's counterbalanced against, for the cases cited in our brief, against the right of the plaintiff to seek redress in the venue that is appropriate. In this case, it's state court. What case are you citing as an exception to 1442A that fits within the facts of this case, counsel? Well, there is no decision that fits squarely within this case. Exactly. But, Your Honor, in this case, we are seeking redress against a state agency. And in that case, those cases are typically, in fact, the Constitution requires that they be prosecuted in state court, and that is the venue or forum that MDI selected. But even beyond, getting back to Judge Silverman's question, if you reverse the Eastern District Circuit, based on the determination that the exception does apply, then we would not have needed to seek leave from Judge Henderson. But I would imagine we would still be presented on the remand with a motion on immunity grounds. And so we would submit to the Court that the immunity issue should also be resolved by the Ninth Circuit, because it is squarely presented to the Court. And also for the Court to decide whether to have the 11th Amendment issue before us? Not squarely, Your Honor, but the Court should decide whether to have the 11th Amendment issue before us. How can we rule on it? Where's the case in controversy? Are you going to give me an advisory opinion about the 11th Amendment? Is that what you're looking for? We're not looking for that, Your Honor. Are you talking about 11th Amendment immunity or receiver immunity? I was actually answering Judge Silverman's question about the immunity, and that for the interest of judicial economy, it makes sense to address the immunity issue in conjunction with the 959 issue, because the analysis is very similar. In the case of 959, Section 959, you focus your inquiry upon the question of whether the receivership is prosecuting or transacting the business of the entity in receivership. And given the unique nature of the authority and duties of this particular receiver, there can be no question that this receiver was being asked and directed to transact the business of the CDCR in terms of maintaining and administering contracts to meet the objective of improving the medical care system of the CDCR. So in that sense, you have an order that fits squarely within the exception of Section 959. That is, this receiver was ordered to transact the business of the CDCR to provide services through contracts. Do you have any cases that purport to be exceptions to 959A that are out of the bankruptcy context? Well, the McNaughton case is a good example. Okay. And does that case deal with facts anything close to this? Yes, it does, in the sense that that was a case brought for a death arising from But that's a tort claim. Yes, but the analysis didn't hinge on the nature of the claim. It hinged on the status of the receiver and the nature of the duties the receiver was asked to maintain. In that case, this was an operating receiver in the McNaughton case. So basically, the whole thrust of the 959A analysis is if you're just operating the business, you're covered, are you not? If you're transacting the business, then the exception does apply, which means you don't need leave of the appointing court, correct. And that is exactly what MDI is saying here, that this is a contractual dispute. And the contract was procured with the CDCR under the umbrella of the receivership. So are there cases that provide an exception to 959A that deal with a contractual framework as opposed to a tort framework? I'm not aware of any, Your Honor, but, again, this is a unique receivership. And I don't think the analysis does not hinge, again, on the type of claim being brought, whether it's tort or there's contract. It hinges on the 959 analysis by the letter of the statute hinges on the acts being performed by the receiver, that if the causes of action arise in the context of the receiver transacting business of the entity in receivership, then there's an exception to the clause. Counsel, don't the cases deal with the concept that if the receiver goes out and runs over somebody accidentally with his car out in the parking lot in the process of the work that's being done, then there's an exemption? But when you're dealing with ongoing operations and this person is acting under the auspices of a United States district judge as his arm, if you will, he stepped into the role of the executive, why doesn't 959A apply? Well, Your Honor, there are cases in the context of an operating receiver where the exception has been deemed to apply. I cited to one of them McNulty. There are others cited in our brief. And so, again, to the immunity in the Barton rule is rooted in this notion of judicial immunity and that the – where a judge has absolute immunity and an appointee of the judge has quasi-judicial immunity. That's the underpinning of the immunity. And so the focus, though, again, on the judicial immunity argument is the party, in this case the receiver, performing a judicial function. And in this case, they are not. They are performing an executive function, which is why it's placed within the ambit of Section 959. And instructive of this is the Forrester case, the U.S. Supreme Court case cited with favor by Judge Henderson. In that case, you had a situation where a judge under the authority of state law had the power to demote or discharge probation officers. In that case, the judge who is the defendant did just that, and a disgrounded probation officer brought a claim for sexual discrimination. In the Supreme Court's analysis on – in that case, the judge asserted judicial immunity. And the court looked past the status of the defendant as a judge in saying judicial immunity did not apply, because in that context of what the judge was doing, the judge was performing an executive function, that is, making personnel decisions just as any executive agency would make within personnel – within its authority. And in that context, the court – the U.S. Supreme Court said because the employment was within – because the action – the employment was within the jurisdiction of the state law, the judge did not apply.  in saying judicial immunity did not apply. Mr. Lee, you have about three minutes, and you said you wanted to reserve some. So you're welcome to use it all, or to reserve. No, I'll reserve my remaining time, Your Honor. Thank you, sir. Okay, before we hear from the apolice, let me say we have – we have both – we're going to hear from two lawyers from – have you folks figured out how you're going to divvy up the time? Great. Thanks. Good morning. May it please the Court. I'm Martin Dodd. I'm appearing on behalf of the receiver, Clark Kelso. I'm going to try to take about 10 minutes of the 15 that we have, and counsel for CDCR will take the remainder. At the outset, I want to – I want to note that in view of the significant overlap of issues between Mr. Sillin, the original receiver, and Mr. Kelso, I've been authorized just to say a few words on Mr. Sillin's behalf as well. And notably, MDI acknowledges that the receivers don't have any personal liability here, and so it's not clear why Mr. Sillin has been required to continue to be in this case. He should have been dismissed from the appeal. Mr. Kelso adequately represents the receivership – the receiver in his official capacity. Let me ask you a question. Suppose a receiver running the state prison hospital calls up a plumber and says, we're having a plumbing problem at the prison. The toilets are stuck. We need to have them roto-rooted out. He gets a bill and doesn't pay. Can he – does he have to get – does the plumbing company have to get the judge's permission to sue him? No. That strikes me as a case that would classically fall right within Section 959A. It has to do with the ongoing day-to-day operations of a particular prison in connection with the overall operations of the system. That isn't what we have here. The receiver – the receiver had a unique order. There's no doubt about that. There aren't that many public receiverships out there. But the receiver was given the opportunity to essentially run the entire system and had sort of high-level authority with regard to the remedy in the plot of litigation. If I understand their claim, they say, if I understand it right, the receiver told your clients, we're not sure what you're doing is legal. If it's legal, we'll pay you. If it's not legal, we're not going to pay you. They say it's legal and they're not paying us, and therefore, they've reached a – they've reached a contract. Why isn't that like my plumbing example? Because the receiver was given the overall authority to undertake the – was given the overall contractual authority for the – for the prison medical care system. That was in the court's order. And indeed, prior to the receiver starting work and just about the time that MDI tries to find its way into the prisons, Judge Henderson issued an order specifically with regard to contracting and contract procedure in the prisons. That's that March 30, 2006 order, which MDI claims they fall within. So you have to – you have to think about this from the standpoint that MDI was essentially an interloper in the prisons. They had – I don't think they broke in. Well, they didn't – Somebody let them in. Somebody let them in, but they – but the receiver didn't let them in. And that – and the receiver – the receiver didn't know they were there. And – Where are they supposed to go for relief? Because they're hearing from the department in state court apparently saying, well, we're not responsible because it was the receiver that pulled the plug. And they're hearing in federal court that, oh, you can't come here because the receiver's a court officer. Well, I can't speak – I can't speak to what CDCR, that is, as distinct from the prison medical care system and the receiver. Oh, I take it you know what their position is. I certainly know what their position is. And you know they've said in state court that you can't come to state court and sue us because it's the receiver's fault. I do. So where are they supposed to go? Where's plaintiff supposed to go? If they – if they don't have a remedy in state court, that really isn't for this court to be concerned with. If they have a remedy against CDCR in state court, then they can pursue it. But that – that ought not to translate into a remedy against the receiver. Well, if the receiver is now the one with the executive authority, why isn't the receiver in his official capacity the one that should be sued? In a bankruptcy situation, for example, you can't go on your merry way in state court and keep suing. You're rooted to bankruptcy court. You're rooted to direct your claim against the trustee. Why isn't the receiver in that position here? Because – because they – because the receiver was carrying out his – his official duties on behalf of the court. So is the trustee in bankruptcy. Well, that's – that's correct. But in – in this particular instance, they've – they've tried to sue the receiver and claim that the receiver has no immunity. And the – and essentially this is – Trustees are appointed by the bankruptcy court. They get sued all the time. How is the receiver different? The receiver acting – being sued in his official capacity, how is he immune for the business's liability? Because in this instance, they are alleging that the receiver is – has violated his – essentially committed a tort in his official duties. This is different than if – this is different than – it's a difference between not having liability personally or – and an immunity. And in this particular instance, had the receiver undertaken to enter into a contract on behalf of the prison medical care system with MDI, then we wouldn't be standing here claiming that there's any immunity. But that's not what we have here. No. The claim here is the receiver breached a contract or ordered the breach of a contract. How is that different? Because – because the receiver was acting in the course of his official duties to try to protect the integrity of his authority on behalf of the court. That doesn't make it a remedy-free zone. But if – if in fact – if in fact he's immune from any liability, it – it would. Well, then I suggest maybe we need to re-examine, because do you really think that – that the power to appoint a receiver is the power for a district court to make this a remedy-free zone? That the receiver is free to pick and choose what contracts are going to be honored and which contracts are not going to be honored? No, I don't. Then – then – then what should happen? Well, what should happen is this court should affirm both – both courts. But that – that would produce exactly the result that you said shouldn't happen, because it would give the receiver the power to say, I don't like these contracts, I'm going to pull the plug, and yet become immune from suit. I – I respectfully disagree, because – because the MDI – MDI was acting without – without any authority from the receiver. And the receiver can win the lawsuit. But stop. The question I put to you was did the receiver have the power to cancel a contract? Not a lawful contract. If – I mean, if he cancels it, then he's got – then there would be a claim of breach in the – in the institution. That's exactly what I see in front of us here. They're not saying they entered into a contract with the receiver. They're saying they entered into a contract with the department, which the receiver elected not to honor. Well, it – then – then the department, perhaps, should be the defendant. But the receiver is now the party, given the authority and the responsibility for standing in the place of the department. It's just like the trustee in bankruptcy. Not for CDCR in general. Only for the prison medical care system. So if CDCR, as distinct from the receiver, entered into a contract – Well, stop right there. Because this is plainly about medical services. I mean, there's no claim here that this is something to do with plumbing and doesn't have anything to do with this receivership. If so, then the receiver was acting ultra veris when he canceled the contract or refused to honor it. You're not saying the receiver acted outside his authority, do you? No. Okay. So take this to be a medical services contract. Explain to me why it is the receiver's cancellation isn't something that should be subject to legal review. If – if there was a contract, then – and the receiver – and the receiver – How can we assume there's not a contract? There's no finding by the district court there wasn't a contract here. Well, I – I submit, in fact, that the district court, in the order in April of 07, when this first came before Judge Henderson, the court acknowledged, as does MDI, that they did not have a contract with – with – under state contracting rules. I believe that the record does indeed support the – On a motion to dismiss, there was that factual finding? Not on the motion to dismiss. It's in the record from prior proceedings in April of 07, when MDI tried to bring this before Judge Henderson's attention. Well, I'm sitting here on a motion to dismiss, so I have difficulty understanding how I'm supposed to assume a contract. It doesn't exist. Well, the court could take judicial notice of what – of what – what Judge Henderson had already concluded and what was in the record. Okay. Take my facts. Assume we've got a motion to dismiss. Assume we've got an allegation of the existence of a contract which the receiver elected not to honor or decided wasn't lawfully entered into or whatever formulation. Where is the plaintiff in that case supposed to go for relief? In – in – under your facts, the – the plaintiff would come to Judge Henderson and say, assuming that – if 959A applies, they could sue in state court if there was a – if there was a breach and the receiver had undertaken to cause it. But they've – but you've removed the Federal court. Can they not sue in Federal court? They could sue in the Federal court, yes. And – or alternatively, if they felt the need to ask for permission, they could do so. And – and the court – Judge Henderson would then make his determination as to whether that case should proceed in his court or some other court. But the case – the facts that you have, that the court has posited, we don't have an argument that the receiver should just be able – we do not say that the receiver should be able to willy-nilly violate contracts. That's not the argument that we've made here, because that's not the conduct, actually, which has been challenged. The conduct is – If we're hearing a motion for summary judgment, I might be able to understand your argument. But we're not. So how do – how do I make the assumption that there wasn't a valid contract here with the Department? What I can say – and my – see, my time is up. But what I can say is that Judge – there is in this record and before this Court material that was in front of Judge Henderson on just that issue. And Judge Henderson has – MDI itself has acknowledged, and that's also in the record, that they did not have a contract in compliance with State law. Looks like it's already a Neon Deck circle here. Okay. Good morning. Good morning. May it please the Court, Deputy Attorney General Michelle M. Mitchell, on behalf of CDCR. For CDCR, the rulings on appeal raise one key question, and that specifically is whether a public entity in receivership is immune for the conduct of its receiver, actions for which the receiver himself is immune. You're talking about as a matter of State law, or you're saying as a matter of Federal law? That the receiver is immune? Yes. As a matter of Federal or State law, we would – Okay. On the Federal, you're arguing that on the basis that the receiver is acting on behalf of the Court and there's absolute immunity. Or is there some other immunity under Federal law that you're claiming? No, that would be the immunity that I'm arguing. Okay. And under State law, what's the immunity? Simply, we would – we would assert that it translates to State law as well. So you're saying that the – your claim is that the – because the receiver has absolute immunity under Federal law, that they would be immune under State law? Yes. You don't even get there, if you're correct, on the Federal point, right? That's correct. But if we were to find that 959A does apply here and that this is an ordinary business transaction, then there is no exemption. Would you not proceed in Federal court, just moving forward, without any immunity of any kind? Our position, Your Honor, is that to the extent that the receiver is immune, CDCR should also be immune. If the receiver is not immune, then we see that CDCR is not immune. Okay. Because under these facts, that – under the allegations in the complaint posed by MDI, there's no distinct action that serves as a basis for liability. Okay. Let's assume for a moment that 959A applies and assume for a moment that we think that there's no absolute immunity. Okay. Where should this go? Back to the Eastern District to be tried? Yes. That would be our position, Your Honor. As I said, the sole basis for MDI's claims is the one allegation, the action by the receiver. There's no distinct one that serves as a basis for any liability for MDI's claims specific to CDCR. Well, sure there is. I mean, service was provided to CDCR. I mean, they – under the circumstances, we have to know that they didn't break into the prison and provide services. Now, the receiver may have decided subsequently that the contract wasn't lawfully entered into and so forth, but that doesn't deny the fact that services were rendered. So why is it the state's not responsible at least for the services that were rendered? We're in the impossible position, Your Honor, in that we are subject to a federal court order that says we must do what the receiver says. So we've got that. On the other side, the receiver has ordered us that we cannot pay MDI. We either face contempt of court from the federal court or we face liability. With regard to the allegations in MDI's complaint, there are lots of allegations with regard to CDCR, but none of which deal specifically with liability of CDCR. The only allegation with regard to liability is with regard to the receiver ordering that MDI not be paid. When did MDI first start rendering services for the state? It's not entirely clear. My understanding is it's roughly September, roughly a few months after the receiver's in place, but several months from the actual order appointing the receiver. And it's roughly December, January when the order to stop any payments is made. Does CDCR agree that if the receiver proves correct that MDI really has no remedy? It's in a remedy-free zone. They're just locked out. Then we would assert that that's perhaps harshness of immunity generally. There's always a party that is subject to immunity defense that is left without a remedy. This is no different. It's no more or less harsh than immunity is. What gives the district court the power to immunize the State Department? Your Honor, where there's clearly no separate action by the State Department, we're intertwined. There is no way of looking at it so distinctly. I accept that. What is it that gives the district court the power to say the Department and the receiver collectively bound together are simply immune, and nobody can get them for anything unless I say it's okay? Well, it's really a question of how they've pled their complaint, Your Honor, and there's nothing separate. For them to be successful, you have to assert that we're separate from the receiver. That's the only way. But then still, you have to have a basis for showing some separate liability for CDCR. And we just don't have that before us here. Clearly, the allegations show that the two are intertwined. So for the – in this instance and under these facts, to the extent that the receiver is immune, CDCR has to be immune as well. To the extent that the receiver is subject to litigation, CDCR, too, is subject to litigation. And I've seen my time's up. Thank you, Your Honor. Thank you very much. Mr. Lee. Thank you, Your Honor. Briefly, we're not here on a motion for summary judgment. We are here pursuant to a motion to dismiss. And in that regard – What is the prior order by Judge Henderson that I was hearing about and that apparently you've acknowledged at some point in the record? I dispute the way Mr. Dodd has characterized – I can assume that. I'm not even sure what's being referred to. So what is it I should take a look at? Well, Your Honor, that was before our representation of MDI. But it's my understanding that there was a dispute about the application of – or the nature of the services provided by MDI. It's not my understanding that there was any final determination or formal findings regarding the existence of a legally binding contract. In fact, for the purposes of this Court's analysis, our allegations in our complaint at the excerpts of record in page 596061 demonstrate, in at least several paragraphs of allegations, that we had a valid and enforceable contract with the CDCR. We have to – for purposes of this proceeding, we have to assume that's true, do we not? Absolutely, Your Honor. In addition, to address another one of the receiver's points, there's also an allegation in the complaint that the entity or the individuals we negotiated – MDI negotiated with at the CDCR were bestowed with the power and delegation of authority from the receiver to transact and consummate that contract. And, Your Honor, the – any dispute about the legality of the contract would be, I imagine, something we would hear in the trial of this matter. And in terms of the CDCR's argument, there is no support in State or Federal law of anything resembling vicarious immunity, that the CDCR would somehow enjoy reflective immunity from the receiver. In fact, if you – we know what the receiver's – excuse me, we know what the CDCR's defense is going to be, that their hands were tied. And – Let's follow through the practical problem here. Suppose you're allowed to proceed in State court against the Department. The Department offers up the defense. We've been ordered by the receiver not to pay. What can we do? Let's assume for the moment the State court doesn't honor that defense, goes ahead and decides, no, there's liability here, enters the judgment. But what happens? Because you can't apparently execute the judgment in the face of the Federal court order giving the receiver the authority what to do in this field. You're absolutely right, Your Honor. And given the tension of that scenario, that's why both the receiver and the CDCR must be defendants in the ultimate trial of this matter, that they're inextricably linked, because one – Does that mean we have to be in Federal court, because the receiver has the power to remove and has removed? Well, Your Honor, for the reasons we stated in our brief, we don't believe that's necessary. In the California Court of Appeal, in the Estevez case, has indicated that there's, at least on some level, concurrent jurisdiction between the State courts and the Federal courts as it relates to this particular receivership. But if you're right, you don't object to going back to the Eastern District, do you, to have a trial on this matter? I'm sorry. I did not. If you're correct about 959A, if we were to rule that Judge Henderson exceeded his authority, that there is no absolute immunity and the trial can proceed, you don't have any objections going back to the Eastern District for trial, do you? No. No, Your Honor. I see that my time's up. Thank you. Thank you. The All-Council will stand in recess for today.
judges: Silverman, Clifton, Smith M.